IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL LAUGHLIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 10-213 E |
| | ) | Magistrate Judge Maureen P. Kelly |
| MS. PECK, DAVID SMITH, KIRK | ) | |
| HENDERSON, ROD SHOWER, EMEKA | ) | |
| IBEMERE, SUSAN SENCHAK, SHANNON | ) | [ECF No. 20] |
| RANDALL, VALERIE HIEBNER, DOUG | ) | |
| PETROFF, CO WEST, LT ARYERS, | ) | |
| HARLOW, and LT. YOMAN, | ) | |
| Defendants. | ) | |

## OPINION

**KELLY, Magistrate Judge**

Presently before the Court is a Motion to Dismiss filed on behalf of Defendants Christylee Peck and David Smith, seeking the dismissal of Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 20]. For the following reasons, the Motion to Dismiss Defendants Peck and Smith is granted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Complaint alleges claims for the alleged violation of Plaintiff's rights under the United States Constitution for Defendants' failure to protect him from assaults arising out of his participation in the criminal prosecution of a fellow inmate. We deem the claims to be made pursuant to 42 U.S.C § 1983 for the alleged violation of Plaintiff's Eighth Amendment rights made applicable to the states through the Fourteenth Amendment rights.

While Plaintiff was serving a sentence at the State Correction Institute in Albion, PA ("SCI-Albion") in early 2008, Plaintiff alleges he sent a letter to a Cumberland County official disclosing that Rodney Comer, a fellow inmate, admitted to a past incident involving the

1

molestation of a child. The investigation of Plaintiff's information was assigned to Defendant Peck, a Cumberland County Assistant District Attorney, and Defendant Smith, a Cumberland County detective assigned to the District Attorney's Office. In the course of investigating the information, Plaintiff was asked to present testimony against inmate Comer. Plaintiff agreed to testify, but alleges that he spoke with prison personnel and requested that he be housed separately from Comer. Plaintiff avers he was informed that either he or Comer would be placed in administrative custody. Implementation of this alternative housing arrangement was delayed and both inmates remained in general population of SCI-Albion for approximately one month after the investigation commenced. During this time, Plaintiff began to experience verbal harassment and repeated physical assaults from other inmates and was labeled a "snitch."

Plaintiff alleges he brought the assaults and harassment to the attention of prison personnel and requested that he be placed in protective housing. Plaintiff further alleges that in March of 2008, he forwarded a letter to Defendant Smith, also addressed to Defendant Peck, and presumably detailed the abuse he was suffering.[1] ECF No. 1-2, p. 10. In July 2008, prior to testifying, Plaintiff raised the subject of his letter with Defendant Peck, who had not received it. Plaintiff informed her that he had mailed a letter to Defendant Smith, and Defendant Peck asked Defendant Smith for the letter, read it, and assured Plaintiff that she would contact personnel at SCI Albion. Id. Plaintiff then testified in the Comer criminal matter and was returned to SCI Albion. Plaintiff's Complaint does not allege any further contact with Defendants Peck or Smith. However, during the next nine months, Plaintiff alleges he sustained multiple physical and sexual assaults because of his participation in the prosecution of a fellow inmate. Plaintiff further alleges that the assaults ended when he was eventually transferred to the State Correctional

---

[1] Plaintiff's Complaint does not aver the contents of the letter; presumably Plaintiff complained of the abuse he was suffering as a result of his cooperation with the criminal investigation of Comer.

2

Institute in Mercer, PA ("SCI- Mercer") in March 2009.

Defendants Peck and Smith have filed the instant Motion to Dismiss. [ECF No. 20]. As to Defendant Peck, the Motion to Dismiss is predicated upon prosecutorial immunity and as to Defendant Smith, the Motion to Dismiss is based upon his lack of personal involvement in the decision making process with regard to Plaintiff's housing. Defendants also raise the statute of limitations, noting that the last contact that Plaintiff had with either Defendant was on July 14, 2008. The instant action, however, was not initiated until August 30, 2010, approximately two months after the expiration of the applicable two year statute of limitations. For the reasons that follow, the Motion to Dismiss is granted as to Defendants Peck and Smith.

## II. STANDARD OF REVIEW

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of often frivolous and harassing lawsuits brought by persons in custody. See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). The PLRA significantly amended the statutory provisions with respect to actions brought by prisoners who are proceeding *in forma pauperis* ("IFP"). The amended statute provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that: (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). In the case at issue, Plaintiff has been granted IFP status, and is a prisoner within the meaning of 28 U.S.C. § 1915.[2] Thus, Section 1915(e)(2) is applicable. In applying the PLRA, not

---

[2] The term "prisoner" as used in Section 1915 means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and

3

only is a court permitted to sua sponte dismiss a complaint which fails to state a claim, but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e). See, e.g., Keener v. Pennsylvania Board of Probation and Parole, 128 F.3d 143, 145 n. 2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of *in forma pauperis* actions that are frivolous or fail to state a claim."); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)("It is also clear that section 1915(e) not only permits but requires a district court to dismiss an *in forma pauperis* complaint that fails to state a claim.").

In performing the Court's mandated function of review of complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court must apply the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997)(applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)); Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1997) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'. This is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."), aff'd, 116 F.3d 473 (Table) (4th Cir. 1997).

In compliance with the standard, the Complaint must be read in the light most favorable to the Plaintiff and all well-pleaded, material allegations of fact in the Complaint must be taken as true. See Estelle v. Gamble, 429 U.S. 97 (1976). Dismissal is proper under Rule 12(b)(6), and hence, under Section 1915(e), where the Court determines that the facts alleged, taken as true and viewed in a light most favorable to the Plaintiff, fail to state a claim as a matter of law. See, e.g., Gould Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). In order to

---

conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

survive a motion to dismiss for failure to state a claim, the plaintiff must allege enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." Id. at 1950.

In line with the pleading standards established by the United States Supreme Court in Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has instructed district courts to conduct a two-part analysis when disposing of a motion to dismiss for failure to state a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). This analysis proceeds as follows:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Id. at 210–11 (internal citations omitted).

Finally, courts must construe complaints "so as to do substantial justice." Fed.R.Civ.P. 8(e). Courts liberally construe pro se pleadings and "apply the applicable law, irrespective of

5

whether the pro se litigant has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003) (citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002)).

## III. DISCUSSION

### A. Plaintiff has failed to state a plausible claim for relief as neither Defendant had a "special relationship" with Plaintiff requiring them to act on his behalf.

Section 1983 affords a right to relief where official action causes a "deprivation of rights protected by the Constitution,…." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). The statute is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002). To establish a claim under Section 1983, a plaintiff "must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008).

Reading Plaintiff's Complaint broadly, with regard to Defendants Peck and Smith, Plaintiff alleges the violation of his due process rights pursuant to the Fourteenth Amendment for failing to act to protect him from his fellow inmates. However, the Due Process Clause limits the state's power to act; it does not ordinarily place an affirmative obligation upon the state to act to protect its citizens. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989)(holding that the Due Process Clause "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual").

There are, however, two recognized exceptions to the general rule that the government has no affirmative obligation to act. First, the United States Supreme Court has recognized that

6

"when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989); accord Farmer v. Brennan, 511 U.S. 825, 832 (1994) ("The [Eighth] Amendment also imposes duties on those officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates." (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). Accordingly, courts have found that liability can be imposed on prison officials where a prisoner faces an objectively serious risk of harm and the prison official acts with deliberate indifference towards the inmate's safety. See Farmer, 511 U.S. at 834.

This "special relationship" exception, however, is limited to those state actors who are responsible for the institutionalization of the plaintiff and the selection of the plaintiff's housing. See, e.g., D.N. ex rel. Nelson v. Snyder, 608 F. Supp.2d 615, 622-23 (M.D. Pa. 2009); Delrosario v. City of New York, No. 07-Civ.-2027, 2010 WL 882990 (S.D.N.Y. March 4, 2010). In D.N. ex rel Nelson, the court dismissed with prejudice an action against the police chief and township manager for failing to prevent the sexual assault of two minors in foster care by a police officer who was permitted to resign after child pornography was found on his work place computer. The police chief and manager argued that they "possessed no control and there was no custodial relationship between the Defendants and the Plaintiffs sufficient to create a 'special relationship.'" The court concluded that because the defendants did not select the foster parents or maintain physical custody over Plaintiffs, the "special relationship" exception did not apply. Id. "Assuming *arguendo* that a special relationship duty arose in this case, that duty logically

fell to the Pennsylvania Department of Welfare or some similar agency tasked with institutionalizing and providing protection for [plaintiffs]. Plaintiffs' claim arising under the special relationship theory must consequently be dismissed. Leave to amend will be denied as futile." D.N. ex rel. Nelson v. Snyder, 608 F. Supp.2d at 623.

Similarly, in Delrosario v. City of New York, No. 07-Civ.-2027, 2010 WL 882990 (S.D.N.Y. March 4, 2010), judgment was entered as a matter of law in favor of an Assistant District Attorney on facts nearly identical to the instant action. The action was filed by a prisoner who had been cooperating with authorities, and as a result was repeatedly threatened and assaulted by other inmates. The prisoner alleged that his criminal defense attorney advised the Assistant District Attorney or her assistant of the assaults and threats, and was told that a letter would send a letter immediately to have the Plaintiff moved to another facility. Plaintiff alleged he was not moved as promised and while awaiting transfer, he was attacked by another inmate and suffered serious injuries, including a broken jaw.

Citing Ying Jing Gan v. City of New York, 996 F.2d 522, 531 (2d Cir. 1993) and Morales v. N.Y. State Dep't of Corrections, 842 F.2d 27, 30 (2d Cir. 1998), the District Court held that no special relationship for the safety of a witness existed as between the prosecutor and a prisoner. "While cognizant of the special relationship that exists between prison officials and inmates … that relationship has not been extended to reach other state actors." The Court went on to find that in the absence of a constitutional duty to protect the plaintiff, the Assistant District Attorney was entitled to qualified immunity, protecting her from liability for the prisoner's injuries. Delrosario v. City of New York, 2010 WL 882990.

In this case, Plaintiff was in the physical custody of the Pennsylvania Department of Corrections ("DOC"), which was the agency charged with determining appropriate housing for

8

him. Prior to agreeing to testify, Plaintiff alleges he raised the subject of alternative housing arrangements with DOC personnel, in anticipation of the potential safety issues attendant with testifying against a fellow inmate. ECF No. 1-2, p.4 ¶ 4. Accordingly, Plaintiff understood that it was the DOC which had the authority and means to make decisions regarding his safety within the DOC system. In the absence of physical custody and/or any recognized duty to "step into the shoes of prison officials and safeguard prisoners," neither Peck nor Smith were in a "special relationship" imposing upon them a duty to find alternative housing for Plaintiff to safeguard him from potential abuse related to his testimony and Plaintiff cannot predicate a claim for a due process violation on this exception.

**B. The "State-Created Danger" Theory.**

The United States Court of Appeals for The Third Circuit has recognized a second exception to DeShaney known as the state-created danger doctrine. "'When state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention,' such affirmative conduct may give rise to a claim under the Due Process Clause." Rodriquez v. City of Philadelphia, 350 F. App'x 710, 712 (3d Cir. 2009), quoting, Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006). "Requiring a plaintiff to prove [or allege] the existence of an affirmative act ensures that only the 'misuse of state authority, rather than the failure to use it' establishes the basis for substantive due process liability." Rodriquez v. City of Philadelphia, 350 F. App'x 712, citing, Bright, 443 F.3d at 282. To prevail on a state-created danger claim, Plaintiff must allege:

(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct;

(2) the state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts"…; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright, 443 F.3d at 281 (quotations and footnotes omitted).

As in Rodriquez and Bright, it is unnecessary to consider anything other than the fourth essential element of a meritorious state-created danger claims, because Plaintiff's Complaint fails to allege facts establishing that the Defendant Peck or Smith's affirmative use of state authority caused the danger Plaintiff encountered. Rodriquez, 350 F. App'x at 713.

The allegations set forth in Plaintiff's Complaint as to Defendants Peck and Smith are as follows:

2. On 1-7-08 I was called in to the Counselor office Ms. Randell because the D.A. from Cumberland Co. was on the phone.

3. The D.A. Ms. Peck ask me a bunch of question's about (Rodney Comer) I said that he told me all about what he did to the little girl then she ask me if I wanted to still testify I said yes and she said see you on the 1-17-08.

7. on 1-17-08 I was seen the DA. Ms. Peck and the Detective David Smith and I told them all I know about the case and some other things he told me they told me they will see me before I left the jail but they did not.

28. on 3-7-08 I was again punch on my side.

29. on 3-10-08 I sent a letter to the D.A. Peck Mr. Smith and Mr. Henderson my lawyer

30. telling them what I been hearing [being called a snitch] and sent them some of the letter I was recieveding and telling them that I was paying someone to watch my back and how that Ronkamarer was saying stuff about me in pill line.

68. on 7-14-08 I seen Ms. Peck before I was to testify and I ask her if she received a letter I sent her in March she said no.

69. I said I sent it to Mr. Smith so she called Mr. Smith and he brought it over

>           for her to read.
>
> 70.      She told me she will call up to SCI-Albion and talk to them.
>
> 71.      I testify against Rodney Comer and was sent back to the County Jail.
>
> 72.      on 7-21-08 I left Cumberland County Jail and got back to SCI-Albion about 6:00 pm
>
> 73.      things went good for me for about 2 week's.

ECF No. 1-2 (sic passim). These allegations, like those in <u>Rodriquez</u>, simply do not state a claim for the wrongful <u>affirmative</u> use of Defendants' authority in causing the danger Plaintiff encountered by his fellow inmates at SCI-Albion.

In <u>Rodriquez</u>, the plaintiff, a jail guard, alleged that the City of Philadelphia violated his due process rights by failing to do more to prevent an attack by a prisoner. The attack occurred in a particular section of a Philadelphia jail allegedly known to officials as unsafe. The Court of Appeals determined that Plaintiff's contentions that the City of Philadelphia could have done more to prevent the dangerous condition from arising and that it failed to enforce existing security measures were insufficient as a matter of law to state a claim against the City of Philadelphia.

> We have previously considered similar attempts by litigants to "recharacterize [a state actor's] failures as affirmative actions," and have consistently held that a plaintiff must show more than the government's failure to prevent" an injury in order to prevail on a state-created danger claims…. Rodriguez's claim boils down to a charge that "[t]he city breached its duty of care to … [him] by failing to provide a safe work environment," and, as a matter of law, such a charge does not suffice to establish a duty process violation.

<u>Id.</u> In contrast, the District Court in <u>D.N. ex rel. Nelson</u>, <u>supra</u>, held that a claim was sufficiently set forth against certain defendants where it was specifically alleged that those defendants took "several affirmative steps that significantly increased" the danger presented by exposing the

11

minor plaintiffs to a pedophile former employee who subsequently assaulted them. These steps included the suppression and destruction of evidence of the pedophile's prior criminal conduct involving the possession of child pornography, entering into an agreement "contractually obligating the Township to silence in the wake of [the pedophile's] flagrant criminal act on Township property" and encouraging Township employees to refrain from any disclosures about the former employee's criminal conduct. Id. at 627. The District Court concluded that these actions, if true, were not "a failure to intervene" but constituted sufficient "affirmative government misconduct," which placed the plaintiffs in foreseeable danger. Id.

Here, Plaintiff's allegations as to Defendants Peck and Smith do not set forth any "affirmative government misconduct" upon which a "state created danger" claim may be predicated. Because a cognizable Fourteenth Amendment claim cannot be stated against Defendants Peck or Smith on the facts alleged, Plaintiff's claims against them are dismissed.

**C. Absolute Immunity does not apply.**

Defendant Peck raises the doctrine of absolute immunity as a complete defense to Plaintiff's claims. Prosecutors have absolute immunity for claims for damages arising out of duties that "are intimately associated with the judicial phase of the criminal process," including the initiation of prosecutions, the presentation of evidence at trial, preparatory functions such as evaluating and organizing evidence and presenting it to a grand jury, and the decision of which criminal charges to bring. Imbler v. Pachtman, 424 U.S. 409, 430 (1976). However, when a prosecutor functions as an investigator or administrator, absolute immunity is not afforded. Buckley v. Fitzsimmons, 509 U.S. 259, 273-274 (1993).

In Ying Jing Gan v. City of NewYork, 996 F.2d 522, 531 (2d Cir. 1993), the United States Court of Appeals for the Second Circuit ruled that a prosecutor's failure to protect a

witness was "not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings." Accordingly, absolute immunity did not apply to bar the action against the prosecutor. Here, Plaintiff seeks damages resulting from Defendant Peck's alleged failure to protect him from other inmates, not from any prosecutorial function for which absolute immunity has been provided. Accordingly, under the facts alleged, absolute immunity does not apply to bar Plaintiff's claim.

### D. Statute of Limitations.

When conducting a screening review of a pro se complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations. As the United States Court of Appeals for the Third Circuit recently explained when it affirmed the screening dismissal of a pro se complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Thus, Pennsylvania's two year statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256 F. Appx. 563, 564–65 (3d Cir.2007). Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may sua sponte dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656–57 (4th Cir.2006) (citation omitted) (finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.").

Smith v. Delaware County Court, 260 F. App'x. 454, 455 (3d Cir.2008); see also Jackson v. Fernandez, No. 08–5694, 2009 WL 233559 (D.N.J. Jan.26, 2009); Hurst v. City of Dover, No. 04–83, 2008 WL 2421468 (D.Del. June 16, 2008).

Applying these standards, this Court finds that the allegations against Peck and Smith are clearly subject to dismissal on statute of limitations grounds. Specifically, the Complaint alleges misconduct beginning in January, 2008, and that his last contact with these Defendants occurred on July 14, 2008. Plaintiff also alleges that his next physical attack as a result of his cooperation with the Comer prosecution occurred on August 9, 2008. However, his Complaint was not filed until August 30, 2010.[3]

It is well-settled that civil rights claims are typically subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266–67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir.1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir.1998)

---

[3] While Plaintiff is entitled to the benefit of the "prisoner mailbox rule," first articulated by the United States Supreme Court in Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), his initial complaint and the claims set forth therein remain untimely. In Houston, the Supreme Court applied Federal Rule of Appellate Procedure 4(a)(1), requiring appeals to be filed within thirty days. The Court held that a pro se prisoner's notice of appeal in a habeas corpus case was filed at the moment it was delivered to prison authorities for forwarding to the district court. Houston, 487 U.S. at 270, 108 S. Ct. at 2382 (citing Fallen v. United States, 378 U.S. 139, 84 S. Ct. 1689, 12 L. Ed. 2d 760 (1964)). Here, Plaintiff signed and dated his IFP Motion commencing this action on August 30, 2010 and it was mailed by officials at SCI-Mercer the same day. ECF No. 1, 1-4. Accordingly, August 30, 2010 is the date from which the applicable statute of limitations is measured.

(quoting Kichline v. Consolidated Rail Corp., 800 F.2d 356, 360 (3d Cir.1986)). See also Lake v. Arnold, 232 F.3d 360, 266–68 (3d Cir.2000).

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).
>
> In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir.2001)

In this case, Plaintiff complains that Defendants Peck and Smith failed to protect him from other inmates after he was labeled a snitch for cooperating in the Comer investigation and prosecution. Plaintiff alleges that he notified both Defendants of his abuse no later than July 14, 2008, and that Defendant Peck advised him that she would speak with SCI-Albion personnel. He next suffered a physical attack directly related to his testimony on August 9, 2008, days after he was "ask about what I said in court and [told] I better watch myself because someone is going to get me now." ECF No. 1-2, p. 11-12, ¶ 77-78. Plaintiff thus was aware no later than August 9, 2008, of the facts giving rise to his claim against Defendants Peck and Smith, for on that day he was aware that Defendants had knowledge of his abuse at SCI-Albion and that they had failed

15

to protect him as requested. Accordingly, while Plaintiff continued to suffer abuse as a result of being labeled a snitch after August 9, 2008, the "continuing conduct of defendant[s] [in failing to protect him] will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir.1998). Because Plaintiff's Complaint was not filed against Defendants Peck and Smith by August 9, 2010, his claims against them are time-barred. Foster v. Morris, 208 F. App'x 174, 177-178 (3d Cir. 2006)(alleged violations regarding the lack of a wheelchair accessible shower and grab bars for an inmate's toilet had a degree of permanence such that plaintiff was on notice of his duty to assert his rights and continuing violations doctrine held inapplicable).

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss filed on behalf of Defendants Peck and Smith is granted. Further, because the statute of limitations bars Plaintiff's claims as to Defendants Peck and Smith, granting leave to amend would be an exercise in futility. Accordingly, the claims asserted by Plaintiff against Defendants Peck and Smith are dismissed with prejudice. An appropriate Order follows.

/s/ Maureen P. Kelly
United States Magistrate Judge

Dated: November 30, 2011

cc:  Daniel Laughlin
     GR-6308
     SCI Mercer
     801 Butler Pike
     Mercer, PA 16137

     All counsel of record via CM/ECF

16